**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ALLISON AMBROSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-cv-00416-MN |
| | ) | |
| DELAWARE STATE UNIVERSITY, TONY ALLEN, KAM KONG, MARWAN RASAMNY, MARY HILL, CHARLIE WILSON, SCOTT THORNTON, AND D. SCOTT GINES, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT
OF THEIR MOTION TO DISMISS**

**SAUL EWING ARNSTEIN & LEHR LLP**

James D. Taylor, Jr. (#4009)
Jessica M. Jones (#6246)
1201 N. Market Street, Suite 2300
Wilmington, DE  19801
Tel: (302) 421-6800
Fax: (302) 421-6813
James.Taylor@saul.com
Jessica.Jones@saul.com

Dated:  July 2, 2021                    *Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS ........................... 1

STATEMENT OF RELEVANT FACTS ................................................................................ 1

ARGUMENT ...................................................................................................................... 5

I.     PLAINTIFF'S TITLE IX RETALIATION CLAIM FAILS. ........................................... 5

       A.    Plaintiff Did Not Allege A Protected Activity......................................................... 6

       B.    Plaintiff Did Not Allege An Adverse Action......................................................... 7

            1.    Failure to Investigate or Otherwise Respond to a Complaint is Not an Intentional, Materially Adverse Action as a Matter of Law. ..................... 8

            2.    Plaintiff's Voluntary Withdrawal from DSU is Not an Adverse Action as a Matter of Law. ............................................................................................ 9

II.    PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM FAILS. ..................... 10

       A.    Plaintiff Has Not Plausibly Alleged A First Amendment Retaliation Claim. ...... 10

            1.    Plaintiff Did Not Allege She Engaged In Constitutionally Protected Speech. ................................................................................................... 10

            2.    Plaintiff Did Not Allege She Suffered An Adverse Action. ..................... 11

       B.    The Individual Defendants Are Entitled To Qualified Immunity......................... 13

III.   PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS. ........................................ 14

       A.    Plaintiff Has Not Identified Any Provision of the "DSU Student Handbook" DSU Breached. ........................................................................................................ 15

IV.   PLAINTIFF'S IMPLIED COVENANT CLAIM FAILS............................................... 15

V.    PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS. ....................................... 17

VI.   PLAINTIFF'S ASSAULT CLAIM FAILS. ............................................................... 18

CONCLUSION................................................................................................................. 20

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Allen v. El Paso Pipeline GP Co., L.L.C.*,
   113 A.3d 167 (Del. Ch. 2014), *aff'd*, 2015 WL 803053 (Del. Feb. 26, 2015) ....................... 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 5

*Atkinson v. Lafayette Coll.*,
   653 F. Supp. 2d 581 (E.D. Pa. 2009) ..................................................................................... 6

*B.W. v. Career Tech. Ctr. of Lackawanna Cty.*,
   422 F. Supp. 3d 859 (M.D. Pa. 2019) ................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................. 5

*Bowers v. Univ. of Delaware*,
   2020 WL 7025090 (D. Del. Nov. 30, 2020) ........................................................................... 1

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006) ............................................................................................................ 8, 13

*C.N. v. Ridgewood Bd. of Educ.*,
   430 F.3d 159 (3d Cir. 2005) ................................................................................................ 14

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*,
   27 A.3d 531 (Del. 2011) ...................................................................................................... 16

*Continental Ins. Co. v. Rutledge & Co.*,
   750 A.2d 1219 (Del. Ch. 2000) ........................................................................................... 17

*DeGroat v. DeFebo*,
   87 F. Supp. 3d 706 (M.D. Pa. 2015) ................................................................................... 13

*Doe v. Mercy Cath. Med. Ctr.*,
   850 F.3d 545 (3d Cir. 2017) ................................................................................................. 5

*Eubanks v. Young Women's Christian Ass'n*,
   2013 WL 4781033 (M.D. Pa. Sept. 5, 2013) ........................................................................ 2

*Fawra v. Wilmington Univ.*,
   2011 WL 3654389 (Del. Com. Pl. July 8, 2011) ................................................................ 15

*Fitzgerald v. Cantor*,
   1998 WL 842316 (Del. Ch. Nov. 10, 1998) ....................................................................... 16

*Flanders v. Dzugan*,
    156 F. Supp. 3d 648 (W.D. Pa. 2016)........................................................................8

*Folks v. Allen*,
    2019 WL 211957 (Del. Com. Pl. Jan. 10, 2019) ....................................................19

*Fortis Advisors LLC v. Dialog Semiconductor PLC*,
    2015 WL 401371 (Del. Ch. Jan. 30, 2015)............................................................16

*George v. Rehiel*,
    738 F.3d 562 (3d Cir. 2013)...................................................................................13

*Gerber v. Veltri*,
    203 F. Supp. 3d 846 (N.D. Ohio 2016), *aff'd*, 702 F. App'x 423 (6th Cir. 2017)..................19

*Gorum v. Sessoms*,
    561 F.3d 179 (3d Cir. 2009)...................................................................................11

*Gundlach v. Reinstein*,
    924 F. Supp. 684 (E.D. Pa. 1996), *aff'd*, 114 F.3d 1172 (3d Cir. 1997)................................15

*Harris v. Saint Joseph's Univ.*,
    2014 WL 1910242 (E.D. Pa. May 13, 2014) ........................................................15

*Heenan v. Rhodes*,
    757 F. Supp. 2d 1229 (M.D. Ala. 2010) ...............................................................11

*Hurd v. Delaware State Univ.*,
    2008 WL 4369983 (D. Del. Sept. 25, 2008) .........................................................10

*Issa v. Delaware State Univ.*,
    268 F. Supp. 3d 624, 632 (D. Del. 2017) .............................................................10

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005).................................................................................................6

*James Cable, LLC v. Millennium Digital Media Sys., L.L.C.*,
    2009 WL 1638634 (Del. Ch. June 11, 2009).........................................................18

*Kaucher v. County of Bucks*,
    455 F.3d 418 (3d Cir. 2006)...................................................................................12

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ..............................................................................7

*King v. Holder*,
    950 F. Supp. 2d 164 (D.D.C. 2013) ......................................................................13

iii

*L. H. v. Pittston Area Sch. Dist.*,
  666 F. App'x 213 (3d Cir. 2016) .................................................................................10, 12

*Lamb-Bowman v. Delaware State Univ.*,
  1999 WL 1250889 (D. Del. Dec. 10, 1999).......................................................................1

*Lord v. Souder*,
  748 A.2d 393 (Del. 2000) ................................................................................................17

*MHS Capital LLC v. Goggin*,
  2018 WL 2149718 (Del. Ch. May 10, 2018) ...................................................................16

*Michaels v. New Jersey*,
  50 F. Supp. 2d 353 (D.N.J. 1999), *aff'd*, 222 F.3d 118 (3d Cir. 2000)...................................14

*Miller v. Clinton Cty.*,
  544 F.3d 542 (3d Cir. 2008).............................................................................................11

*Miller v. Thomas Jefferson Univ. Hosp.*,
  908 F. Supp. 2d 639 (E.D. Pa. 2012), *aff'd*, 565 F. App'x 88 (3d Cir. 2014) .......................15

*Monn v. Gettysburg Area Sch. Dist.*,
  2013 WL 1345501 (M.D. Pa. Apr. 2, 2013) *aff'd*, 553 Fed.Appx. 120 (3d Cir. 2014)...........12

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) ..............................................................................................16

*Overdrive, Inc. v. Baker & Taylor, Inc.*,
  2011 WL 2448209 (Del. Ch. June 17, 2011) ...................................................................16

*Pearson v. Callahan*,
  555 U.S. 223 (2009)..........................................................................................................13

*Pivirotto v. Innovative Sys., Inc.*,
  191 F.3d 344 (3d Cir. 1999)...............................................................................................6

*S.K. v. North Allegheny Sch. Dist.*,
  168 F. Supp. 3d 786 (W.D. Pa. 2016)..............................................................................8, 9

*Scott v. Sunoco Logistics Partners*,
  918 F.Supp.2d 344 (E.D. Pa. 2013) ...................................................................................8

*Simpson v. Kay Jewelers*,
  142 F.3d 639 (3d Cir. 1998)...............................................................................................6

*State v. Simpson*,
  1990 Del. Ch. LEXIS 149 (Del. Ch. Sep. 24, 1990)........................................................17

iv

*Stephenson v. Cent. Mich. Univ.*,
    897 F. Supp. 2d 556 (E.D. Mich. 2012)...................................................................11

*Terrell v. Delaware State Univ.*,
    2010 WL 2952221 (D. Del. July 23, 2010) ............................................................10

*Tilghman v. Delaware State Univ.*,
    2012 WL 3860825 (Del. Super. Ct. Aug. 15, 2012)...............................................19

*Vanaman v. Palmer*,
    506 A.2d 190 (Del. Super. Ct. 1986) ........................................................................1

*Verdu v. Trustees of Princeton Univ.*,
    2020 WL 1502849 (D.N.J. Mar. 30, 2020)...............................................................7

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003) .........................................................................................15

*Whitfield v. Notre Dame Middle Sch.*,
    412 F. App'x 517 (3d Cir. 2011) ...............................................................................6

*Williams v. Pennridge Sch. Dist.*,
    782 F. App'x 120 (3d Cir. 2019) ...............................................................................9

*Williams v. Pennsylvania State Univ.*,
    2020 WL 5291985 (M.D. Pa. Sept. 4, 2020) ...........................................................2

*Wood v. Moss*,
    134 S.Ct. 2056 (2014)..............................................................................................14

*Yan v. Penn State University*,
    529 Fed.Appx. 167 (3d Cir. 2013) ............................................................................5

### STATUTES & RULES

Fed. R. Civ. P. 12(b)(6)....................................................................................................5

### OTHER AUTHORITIES

FIRST AMENDMENT ............................................................................................... *passim*

ELEVENTH AMENDMENT.....................................................................................................10

**INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiff, Allison Ambrose, is a former DSU student and former member of the DSU women's golf team who lost her athletic scholarship as a result of her low GPA. Rather than take responsibility for her poor academic performance, Plaintiff filed a complaint (the "Complaint") against DSU and seven of its employees on March 23, 2021 alleging retaliation, breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and assault. However, Plaintiff's rambling complaint, which relies entirely on irrelevant factual allegations and conclusory statements, fails to state a claim for relief. Indeed, the majority of Plaintiff's allegations—which cannot state a claim regardless—fall outside the applicable statute of limitations and must be ignored as a matter of law. Plaintiff's attempt to hold DSU and her former professors, advisors, coaches, and administrators liable for her own actions is wholly ineffective. Because Plaintiff failed to allege a single plausible claim, her complaint should be dismissed in its entirely, with prejudice.

**STATEMENT OF RELEVANT FACTS[1]**

Plaintiff enrolled at Delaware State University ("DSU") as a Freshman in Fall 2016. *See* Compl. ¶¶ 14-15. She was offered a $2,000 athletic scholarship by Scott Thornton, coach of the DSU women's golf team ("Coach Thornton"), "with an opportunity to receive further

---

[1] Plaintiff alleges conduct occurring prior to March 23, 2019. *See* Compl. ¶¶ 14-43. While those allegations fail to state a claim for relief regardless, they must be ignored for purposes of Plaintiff's Title IX, First Amendment, and assault claims because the statute of limitations for those claims is two years. *See Lamb-Bowman v. Delaware State Univ.*, 1999 WL 1250889, at *9 (D. Del. Dec. 10, 1999) (statute of limitations for Title IX retaliation claim is two years); *Bowers v. Univ. of Delaware*, 2020 WL 7025090, at *4 (D. Del. Nov. 30, 2020) (statute of limitations for First Amendment retaliation claim is two years); *Vanaman v. Palmer*, 506 A.2d 190 (Del. Super. Ct. 1986) (statute of limitations for assault claim is two years). Except where those allegations are relevant to Plaintiff's other three claims (each with a three year statute of limitations), they are omitted from Defendants' Statement of Relevant Facts.

scholarships after [Coach Thornton] saw her improve under his supervision." *Id.* ¶ 14.  Plaintiff does not allege when Coach Thornton made the scholarship offer or any other conditions of the scholarship besides the requirement that she "fulfill[ ] her obligations as a ***student*** athlete." *Id.* ¶ 110 (emphasis added).  Plaintiff also does not allege she "improved" as a golfer under Coach Thornton.

Golf is an NCAA Division I sport at DSU and all members of the women's golf team must maintain a 2.0 GPA and make specified progress (measured in credit hours) towards a degree.  *See* Graduation Requirements:  Grades and Grade Point Averages, https://www.desu.edu/academics/commencement/graduation-requirements (last visited:  June 21, 2021) ("Graduation Requirements," attached hereto as "Exhibit A"); NCAA:  Staying on Track, https://www.ncaa.org/student-athletes/current/staying-track-graduate (last visited:  June 21, 2021) ("Staying on Track," attached hereto as "Exhibit B"); NCAA:  Division I Progress-Toward-Degree Requirements, https://www.ncaa.org/about/division-i-progress-toward-degree-requirements (last visited:  June 21, 2021) ("Degree Progress," attached hereto as "Exhibit C").[2]  Plaintiff does not allege she maintained a 2.0 GPA or made the requisite progress towards her degree.

While enrolled at DSU, Plaintiff took the same course—taught by Dr. Kam Kong ("Dr. Kong")—twice.  *See* Compl. ¶¶ 8, 37, 43.  The first time, she received a "D," because (she alleges) she "was unfamiliar with the subject matter." *Id.* ¶ 44.  Plaintiff repeated Dr. Kong's

---

[2] The Court may take judicial notice of information on DSU's and the NCAA's websites.  *See Williams v. Pennsylvania State Univ.*, 2020 WL 5291985, at *5 (M.D. Pa. Sept. 4, 2020) ("the Court is taking judicial notice of Penn State's Code of Conduct...and other related policies and procedures, which are publicly available on Penn State's website"); *Eubanks v. Young Women's Christian Ass'n*, 2013 WL 4781033, at *5 (M.D. Pa. Sept. 5, 2013) ("We take judicial notice of [non-profit organization] YWCA's official website").

course in Spring 2019 and again struggled with the course material.  *Id.* ¶ 41.  Dr. Kong and Plaintiff allegedly met on two occasions—February 27, 2019 and March 17, 2019—to discuss Plaintiff's "grade...and how to improve her performance."  *Id.* ¶¶ 41-42.  After those meetings, Plaintiff secured a tutor and "her work began to improve," but Dr. Kong allegedly "refused to acknowledge any improvement."  *Id.* ¶ 45.  Plaintiff claims Dr. Kong told her that "her work was not acceptable even when she had the same answers as other students, whom he had given an 'A.'"  *Id.* ¶ 46.  One of the students[3] who allegedly "had the same answers" was male.  Compl. ¶ 47.  Plaintiff claims further Dr. Kong:  "refused to acknowledge her work and continued to call on other students;" "said he would refuse to grade her homework if she continued with a tutor;" and "continued to find fault with Plaintiff's work even though she [allegedly] performed satisfactorily on her test."  *Id.* ¶¶ 49-53.

At some point, Plaintiff scheduled a meeting with Dr. Marwan Rasamny, the Chairperson of DSU's Computer and Information Science Department ("Dr. Rasamny"), and Dr. Kong to discuss Plaintiff's perceived course related issues.  *See id.* ¶ 53.  During that meeting, Dr. Kong allegedly accused Plaintiff of cheating because "Plaintiff's tutor was doing all the work."  *Id.* ¶ 57.  In response, Plaintiff purportedly offered "to take a test right there," but "Dr. Kong refused." *Id.* ¶ 55.  Plaintiff then allegedly "learned Coach Thornton and Dr. Kong had been talking about her grades and performance without her knowledge," but does not allege how she obtained such information.  *Id.* ¶ 60.  Plaintiff received an "F" in Dr. Kong's course, which allegedly left her "one credit short of keeping" her golf scholarship.  Compl. ¶¶ 61-62.

---

[3] Plaintiff does not allege the genders of the other students who purportedly received an "A" or that Dr. Kong gave Plaintiff a lower grade because she is female.

Plaintiff scheduled another meeting with Dr. Rasamny to discuss her grade in Dr. Kong's course. *Id.* ¶ 63. During that meeting Dr. Kong allegedly "admitted that he talked with Coach Thornton on several occasions to discuss Plaintiff's grades and position on the team." *Id.* ¶ 64. Despite the two year statute of limitations applicable to most of her claims—which renders untimely any claims based on actions taken before March 23, 2019—Plaintiff does not allege ***when any of the aforementioned events occurred***.

On April 1, 2019, Plaintiff alleges she made a complaint regarding Dr. Kong and Coach Thornton to her Academic Advisor, Dr. Charlie Wilson ("Dr. Wilson"). *See* Compl. ¶ 67. On April 25, 2019, Dr. Kong and Coach Thornton were allegedly notified of Plaintiff's complaint and Dr. Kong purportedly: "attempted to call Plaintiff several times;" waited for Plaintiff "outside of her class in the computer lab;" followed "Plaintiff down the hall and down several flights of stairs;" and "yelled down the hall and followed Plaintiff to her car."[4] *Id.* ¶¶ 69-76.

Plaintiff alleges she made a complaint regarding Dr. Kong's attempt to contact her to the DSU Police Department and DSU's then-Provost (now its President), Dr. Tony Allen ("Dr. Allen"), but there was no response to her complaint.[5] *See id.* ¶ 79. After leaving Dr. Allen's office, Plaintiff claims Dr. Allen's assistant, Eleanor Wilson, "witnessed Plaintiff in tears." *Id.* ¶ 86. Plaintiff also claims DSU's Athletic Director, D. Scott Gines,[6] said he would assist Plaintiff "in transferring to another institution." *Id.* ¶ 84. Ultimately, although Dr. Allen "advised

---

[4] Plaintiff does not allege Dr. Kong was ever close enough to cause her imminent harm or that she feared Dr. Kong would actually harm her.

[5] Plaintiff does not allege any of the complaints made within the applicable limitations period were related to gender discrimination.

[6] Together Coach Thornton, Dr. Kong, Dr. Rasamny, Dr. Allen, Eleanor Wilson, D. Scott Gines, and Mary Hill, DSU's then Interim Athletic Director, are the "Individual Defendants" and, with DSU, the "Defendants."

Plaintiff not to withdraw," Plaintiff voluntarily left DSU after allegedly learning Dr. Kong would be teaching two of her "major classes." *Id.* ¶¶ 80, 87.

## ARGUMENT

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) where, like here, it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy that standard, a complaint must plead ***facts***, not mere legal conclusions. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the facts plead must give rise to a ***plausible*** claim for relief. *Id*. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Plaintiff's Complaint—which is based almost entirely on conclusory and irrelevant allegations—does not state any plausible claim for relief and should be dismissed in its entirety.

## I.     PLAINTIFF'S TITLE IX RETALIATION CLAIM FAILS.

Plaintiff's Title IX retaliation claim against DSU fails: she has not alleged DSU retaliated against her because she complained about sex discrimination. To state a *prima facie* case of retaliation under Title IX and avoid dismissal, Plaintiff must allege facts sufficient to plausibly show: (1) she engaged in protected activity; (2) she suffered an intentional, adverse action; and (3) there was a causal link between the two. *See Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017); *see also Yan v. Penn State University*, 529 Fed.Appx. 167, 171 (3d Cir. 2013) (a plaintiff must show "intentional conduct...to recover on a claim of retaliation"). Plaintiff has not alleged facts that, even if true, could satisfy these elements.

A.      **Plaintiff Did Not Allege A Protected Activity.**

Plaintiff has not plausibly alleged DSU retaliated against her because she complained of *sex discrimination*. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) (a claim for retaliation under Title IX requires that "a funding recipient retaliate[ ] against a person because he complains of sex discrimination"). This failure is fatal to Plaintiff's Title IX retaliation claim. *See Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 522 (3d Cir. 2011) ("Title IX makes it unlawful for a federally funded entity to discriminate on the basis of sex...there is no evidence of sex discrimination in the record. Therefore, Plaintiffs' claim under Title IX fails as a matter of law.").

The sole allegation in Plaintiff's Complaint related in any way to sex is that "Dr. Kong gave [a] male student preferential treatment over [her]."[7] However, "preferential treatment" (even if it occurred and Plaintiff complained about it—which she does not allege), is not unlawful sex discrimination. *See Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 359 (3d Cir. 1999) (plaintiff's "evidence of the allegedly better treatment of male employees [is] weak and not probative of discrimination"); *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998) ("evidence of differential treatment of a single member of the non-protected class is insufficient to give rise to an inference of discrimination"). Because Plaintiff's conclusory allegations regarding "preferential treatment" cannot amount to unlawful sex discrimination as a matter of law, a complaint regarding such treatment is not a "protected activity" for purposes of Plaintiff's Title IX retaliation claim and her claim must be dismissed. *See Atkinson v. Lafayette Coll.*, 653 F. Supp. 2d 581, 595-96 (E.D. Pa. 2009) ("while informal complaints about

---

[7] Plaintiff does not even allege such "preferential treatment" occurred **because she is female**— she simply alleged a male student received a better grade than her.

unlawful discrimination may suffice as protected activity for purposes of a retaliation claim under Title IX, the message must at a minimum convey the speaker's express or implicit protest of discriminatory practices that violate the federal anti-discrimination statutes; a general complaint of unfair treatment is insufficient to establish protected activity").

Further, while Plaintiff alleges, in a conclusory fashion, "DSU did not act on [her] complaints of a hostile education environment based on gender" regarding her complaints about "Coach Thornton or Dr. Kong," she does not allege she ever actually made complaints *about gender discrimination* to anyone at DSU. *See Verdu v. Trustees of Princeton Univ.*, 2020 WL 1502849, at *7 (D.N.J. Mar. 30, 2020) ("Plaintiff alleges that he reported...he was being subjected to a 'hostile work environment'...However, Plaintiff does not aver that when he made his complaints...he also conveyed...that his complaints related to a claim about sex discrimination or gender bias. The only conduct prohibited by Title IX is discrimination on the basis of sex. Plaintiff's mere use of the phrase 'hostile work environment' in his complaints does not convert those complaints into 'protected activity.'").  Indeed, Plaintiff did not allege:  when she made "complaints of a hostile education environment *based on gender*;" the subject of such complaints; or where, how, and to whom the complaints were made.  *See generally* Compl.; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (allegation that "Plaintiff complained internally about discrimination" did not "sufficiently allege discrimination or retaliation. There is no context for when Plaintiff complained, or to whom" and Plaintiff "should know who she complained to about the discrimination, when she complained, and what the response was").  Plaintiff's Title IX retaliation claim therefore fails.

### B.   Plaintiff Did Not Allege An Adverse Action.

Assuming *arguendo* Plaintiff plausibly alleged she engaged in a protected activity (she did not), she failed to allege DSU took any intentional, materially adverse action because she

engaged in that activity. The intentional, adverse action required to state a *prima facie* case of Title IX retaliation must be "materially adverse such that it might well have dissuaded a reasonable [person in plaintiff's position] from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-70 (2006); *see also S.K. v. North Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 804 (W.D. Pa. 2016) ("a material adverse action is one that produces injury or harm."). Further, inactions are not, as a matter of law, intentional, adverse actions. *See Flanders v. Dzugan*, 156 F. Supp. 3d 648, 671 (W.D. Pa. 2016) ("[Plaintiff] cannot premise his claim on the Defendants' alleged failure to 'correct[ ] their errors'...because '[a]llegations of inaction are insufficient to maintain a claim for retaliation.'"); *Burlington*, 548 U.S. at 70 (finding that retaliation contemplates some affirmative action). Plaintiff alleged nothing more than inactions here and her Title IX retaliation claim must be dismissed. Indeed, Plaintiff claims: (1) DSU failed to take action in response to her purported complaints (*see* Compl. ¶¶ 81, 84, 88); and (2) she faced "constructive expulsion" because of DSU's inactions (*see* Compl. ¶ 83). Neither is an intentional, adverse action.

### 1. Failure to Investigate or Otherwise Respond to a Complaint is Not an Intentional, Materially Adverse Action as a Matter of Law.

A defendant's failure to investigate a complaint of, or otherwise remedy, alleged discrimination or harassment is not an "adverse action" as a matter of law. *See, e.g.*, *B.W. v. Career Tech. Ctr. of Lackawanna Cty.*, 422 F. Supp. 3d 859, 887 (M.D. Pa. 2019) ("the mere possibility that defendant intentionally failed to curb the harassment by plaintiff's [teacher] falls short of the plausible showing of intentional conduct needed to identify a form of materially adverse action needed to state a claim for retaliation"); *Scott v. Sunoco Logistics Partners*, 918 F.Supp.2d 344, 356 (E.D. Pa. 2013) (noting that "a total failure to investigate is not an adverse

employment action").   Thus, DSU's alleged failure to take action in response to Plaintiff's purported complaints is not an intentional, materially adverse action as a matter of law.

### 2.   Plaintiff's Voluntary Withdrawal from DSU is Not an Adverse Action as a Matter of Law.

"Constructive expulsion" (*see* Compl. ¶ 83) is likewise not an adverse action.   A student's decision to transfer or withdraw—even if allegedly made because a defendant university failed to respond to complaints of discrimination—cannot form the basis of a Title IX retaliation claim.   *See Williams v. Pennridge Sch. Dist.*, 782 F. App'x 120, 126 (3d Cir. 2019) (plaintiff student did not suffer an adverse action for purposes of her Title IX retaliation claim where she voluntarily left defendant school despite her allegation she was "de facto" removed because defendant failed to take corrective action in response to her complaints of harassment). *North Allegheny School District* is instructive.   There, plaintiff student claimed she suffered an adverse action because she was "effectively forced" by defendant school district to transfer. *North Allegheny Sch. Dist.*, 168 F. Supp. 3d at 804.   The court found plaintiff's allegations insufficient, and dismissed her Title IX retaliation claim explaining:

> Bald and conclusory assertions of cause and effect simply fall short of the level of factual setting and context required to state a claim. It cannot be questioned ***that plaintiff made the decision*** to transfer to Mars School District when defendant's efforts to control the discrimination assertedly proved to be inadequate.   But the assertion that defendant intentionally failed to gain control over the environment in order to bring about such an injury to plaintiff amounts to ***nothing more than unsupported speculation***.   Such speculation falls short of the factual grounding needed to advance a plausible showing of entitlement to relief.

*Id.* (emphasis added).   Plaintiff offers nothing more here.

Because Plaintiff has not alleged facts sufficient to show she engaged in a protected activity and suffered an intentional, materially adverse action as a result, her Title IX retaliation claim must be dismissed.

## II.   PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM FAILS.

### A.   Plaintiff Has Not Plausibly Alleged A First Amendment Retaliation Claim.

Plaintiff's First Amendment retaliation claim must be dismissed because she failed to allege she engaged in Constitutionally protected speech or that the Individual Defendants took any adverse action against her because of that speech.[8]  "A successful claim of First Amendment retaliation must show that a plaintiff engaged in constitutionally protected conduct, was subjected to adverse actions by a state actor, and demonstrate that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action."  *L. H. v. Pittston Area Sch. Dist.*, 666 F. App'x 213, 216 (3d Cir. 2016).  Plaintiff has not plausibly alleged facts sufficient to satisfy any prong.

### 1.   Plaintiff Did Not Allege She Engaged In Constitutionally Protected Speech.

Plaintiff has not alleged she engaged in speech protected by the First Amendment.  To receive Constitutional protection, speech must transcend personal interest and "involve matters of public concern" that touch on "broad social or policy issues."  *Gorum v. Sessoms*, 561 F.3d 179, 187 (3d Cir. 2009).  However, courts may not "'cherry pick' something that may impact the public while  ignoring  the  manner  and  context  in  which  [a]  statement  was  made  or

---

[8] Defendants believe Plaintiff's state law claims against DSU and her First Amendment claim against the Individual Defendants in their official capacities are barred by the Eleventh Amendment.  *See, e.g.*, *Terrell v. Delaware State Univ.*, 2010 WL 2952221, at *4 (D. Del. July 23, 2010) (granting defendants' motion to dismiss with respect to the plaintiff's section 1983 claims against DSU and [DSU's then President] in his official capacity on Eleventh Amendment grounds); *Hurd v. Delaware State Univ.*, 2008 WL 4369983, at *3 (D. Del. Sept. 25, 2008) (Plaintiff's "claim against DSU and [one of its employees] under 42 U.S.C. § 1983 fails as a matter of law because it is barred by the Eleventh Amendment of the United States Constitution").  Defendants respectfully reserve their right to assert the defense upon a more complete record should any such claims proceed.  *See, e.g., Issa v. Delaware State Univ.*, 268 F. Supp. 3d 624, 632 (D. Del. 2017).

that public concern expressed." *Miller v. Clinton Cty.*, 544 F.3d 542, 550 (3d Cir. 2008). Indeed, the "inquiry must...consider the form and circumstance of the speech in question." *Id.* Plaintiff vaguely alleges she made complaints regarding:  an alleged "hostile educational environment based on gender;" her own grades; and "Dr. Kong and Coach Thornton colluding to reduce [her] grades." *See* Compl. ¶ 97.  Even if such complaints could ever be afforded First Amendment protection, Plaintiff failed to allege she made the complaints for reasons other than her own personal benefit.  *See Gorum*, 561 F.3d at 187 (dismissing First Amendment claim because plaintiff's speech during "student disciplinary hearing related to the personal grievance of one student" and "[t]here [was] no evidence in the record that [plaintiff] even made a public statement...[or] proof that he thought any public policy issues were at stake."); *Heenan v. Rhodes*, 757 F. Supp. 2d 1229, 1239 (M.D. Ala. 2010) (finding student's complaint regarding university grading and disciplinary policy was not protected speech and, even if such complaints could ever be Constitutionally protected, they were not there because the record was clear plaintiff "challenged the policy solely to her own benefit"); *Stephenson v. Cent. Mich. Univ.*, 897 F. Supp. 2d 556 (E.D. Mich. 2012) (finding student's complaints that a faculty advisor failed to supervise her on two occasions, was unavailable to meet, and had an emotional episode did not constitute protected speech under the First Amendment).  Because Plaintiff's alleged speech does not involve matters of public concern, her First Amendment retaliation claim must be dismissed.

### 2.   Plaintiff Did Not Allege She Suffered An Adverse Action.

As with her Title IX claim, Plaintiff was required to allege ***affirmative*** adverse acts by the Individual Defendants to state a viable §1983 First Amendment retaliation claim.  *See Kaucher v. County of Bucks*, 455 F.3d 418, 433 n.11 (3d Cir. 2006) ("[F]ailures to act cannot form the basis of a valid § 1983 claim.").  She has not done so.  In a conclusory fashion, Plaintiff alleges the Individual Defendants:  (1) failed "to remedy Coach Thornton's hostile education

environment;" (2) allowed "Coach Thornton and Dr. Kong to collude for Plaintiff to be kicked off the golf team and then constructively expelled from DSU;" and (3) allowed "Dr. Kong to retaliate against Plaintiff by not grading her work in a fair and objective manner." *See* Compl. ¶ 98.  Plaintiff alleges further Dr. Kong and Coach Thornton "retaliated against [her]." *Id.* ¶ 82. With the exception of her conclusory allegation**s** regarding Dr. Kong and Coach Thornton, Plaintiff did not allege any Individual Defendant took an ***affirmative***, adverse action against her within the applicable limitations period.  Indeed, Plaintiff's allegations amount to nothing more than claims the Individual Defendants did not investigate or otherwise take action in response to her alleged complaints.  Those alleged inactions are not "adverse actions" as a matter of law. *See Monn v. Gettysburg Area Sch. Dist.*, 2013 WL 1345501, at *4-5 (M.D. Pa. Apr. 2, 2013), *aff'd*, 553 F. App'x. 120 (3d Cir. 2014) ("a failure to act on a complaint is not a retaliatory or adverse action sufficient to sustain a First Amendment retaliation claim"); *Pittston Area Sch. Dist.*, 666 F. App'x at 216 (School district's failure to respond to complaints about teacher "were not retaliatory actions and thus could not support parents' First Amendment retaliation claims.").

With respect to Dr. Kong and Coach Thornton, Plaintiff alleges after she filed a complaint on April 1, 2019, Dr. Kong attempted to contact her regarding an even earlier undated[9] incident.  *See* Compl. ¶¶ 69, 77.  Plaintiff then allegedly complained about her interaction with Dr. Kong to DSU's Police Department and Dr. Allen.  *Id.* ¶ 79.  However, aside from Dr. Kong's attempt to contact her, Plaintiff did not allege any affirmative actions by Dr. Kong or Coach Thornton ***after*** she made complaints about them (and within the applicable two

---

[9] Again, Plaintiff does not allege when the actions or inactions forming the basis of her complaints occurred.  *See supra* pp. 3-4.  Because the statute of limitations applicable to her Title IX and First Amendment retaliation claims began to run on March 23, 2019, any conduct occurring before that date cannot support her claims.

year limitations period).   Instead, Plaintiff merely alleges she "was retaliated against by both Coach Thornton and Dr. Kong."  *See* Compl. ¶ 82.  That legal conclusion is insufficient to state a plausible claim for relief and her allegations regarding Dr. Kong's attempt to contact her reflect—at most—a minor annoyance insufficient to rise to the level of a materially adverse action.  *See DeGroat v. DeFebo*, 87 F. Supp. 3d 706, 734 (M.D. Pa. 2015) ("adverse action...is sufficient to support a retaliation claim if 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment Rights'...This means that 'normally petty slights, minor annoyances, and simple lack of good manners' will not support a claim of retaliation."); *see also Burlington*, 548 U.S. at 68 (sporadic verbal altercations or disagreements  do not qualify  as  adverse actions for  purposes  of retaliation claims); *King v. Holder*, 950 F. Supp. 2d 164, 172 (D.D.C. 2013) ("A single verbal altercation between Defendant...and the Plaintiff is not an adverse action for purposes of the Plaintiff's retaliation claim").  Because Plaintiff cannot show any of the Individual Defendants took intentional, materially adverse actions against her after her alleged protected conduct, her First Amendment retaliation claim must be dismissed.

### B.      The Individual Defendants Are Entitled To Qualified Immunity.

Even if Plaintiff could state a First Amendment retaliation claim, her claim against the Individual Defendants in their individual capacities must be dismissed because the Individual Defendants are entitled to qualified immunity.  The qualified immunity doctrine recognizes "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "Properly applied, [the doctrine] protects all but the plainly incompetent or those who knowingly violate the law."  *See George v. Rehiel*, 738 F.3d 562, 571-72 (3d Cir. 2013).  As a result, the bar to overcome qualified immunity is high and liability for civil damages is precluded unless a plaintiff meets her burden

by establishing: "(1) an official violated a statutory or constitutional right; and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 134 S.Ct. 2056, 2066-67 (2014) (internal quotation marks omitted); *Michaels v. New Jersey*, 50 F. Supp. 2d 353, 362 (D.N.J. 1999), *aff'd*, 222 F.3d 118 (3d Cir. 2000) ("Once a defendant raises the defense of qualified immunity, it is the plaintiff's burden to delineate the constitutional right that was violated and show that it was clearly established at the time of the conduct at issue"). Plaintiff must also show each Individual Defendant personally participated[10] in the alleged Constitutional violation. *See C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005). Plaintiff cannot satisfy these criteria. As discussed herein (*see supra* pp. 10-13), Plaintiff failed to plausibly allege any Individual Defendant personally violated her First Amendment rights. Further, because Plaintiff does not have a First Amendment right to complain about matters that do not implicate public concern (like her grades), such "right" could not have been clearly established. Thus, the Individual Defendants are entitled to qualified immunity.

## III.   **PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS.**

Plaintiff's breach of contract claim must be dismissed because Plaintiff failed to identify a single provision of DSU's "Student Handbook" that DSU allegedly breached. To avoid dismissal of her contract claim, Plaintiff must plead: (1) the existence of a contract, ***including its essential terms***; (2) a breach of a duty imposed by the contract; and (3) resulting damages. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Plaintiff's Complaint does not plausibly allege these essential elements.

---

[10] She has not alleged relevant acts by most of the Individual Defendants. For example, Plaintiff does not make a single allegation regarding Mary Hill within the applicable limitations period. *See generally* Compl.

### A.   Plaintiff Has Not Identified Any Provision of the "DSU Student Handbook" DSU Breached.

Delaware court have recognized—at least in certain circumstances regarding private institutions—a breach of contract claim may be based on "a handbook for students, published by the college and distributed to each enrolled student."  *See Fawra v. Wilmington Univ.*, 2011 WL 3654389, at *4 (Del. Com. Pl. July 8, 2011).   However, such claims (where permitted) are cognizable only if a plaintiff's complaint identifies the ***specific and definite provisions of the handbook*** breached by defendant.  *See Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 655 (E.D. Pa. 2012), *aff'd*, 565 F. App'x 88 (3d Cir. 2014) (to prevail on a breach of contract claim a plaintiff "must point to specific undertakings in the [alleged contract] that were not provided") (citations omitted); *Harris v. Saint Joseph's Univ.*, 2014 WL 1910242, at *3 (E.D. Pa. May 13, 2014) ("plaintiff has failed to plead sufficient factual content to support his claim that SJU breached the contract...For example, it is not at all clear which policy(ies) or procedure(s) in the Handbook plaintiff is alleging SJU breached"); *Gundlach v. Reinstein*, 924 F. Supp. 684, 689 (E.D. Pa. 1996), *aff'd*, 114 F.3d 1172 (3d Cir. 1997) (concluding that plaintiff failed to state a breach of contract claim where the plaintiff "fail[ed] to identify the specific benefits he was allegedly promised, the means by which he was promised them, and the manner in which Defendants allegedly reneged on those promises.").   Plaintiff has not met her pleading burden here.  Indeed, the Complaint vaguely and conclusorily alleges DSU breached its "Student Handbook" and recites a laundry list of alleged actions and inactions constituting "breaches" (*see* Compl. ¶ 102), but fails to identify any specific and definite contractual provisions DSU violated.  *See generally* Compl.  Plaintiff's breach of contract claim must be dismissed.

### IV.   PLAINTIFF'S IMPLIED COVENANT CLAIM FAILS.

Plaintiff's Complaint does not plausibly allege a breach of the implied covenant of good

faith and fair dealing.  To plead a breach of the implied covenant under Delaware law, "a litigant must allege a specific obligation implied in the contract, a breach of that obligation, and resulting damages."  *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *3 (Del. Ch. Jan. 30, 2015).  The implied covenant does not impose a "free-floating requirement that a party act in some morally commendable sense."  *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 182-183 (Del. Ch. 2014), *aff'd,* 2015 WL 803053 (Del. Feb. 26, 2015).  Rather, it is a "limited and extraordinary legal remedy"  (*see Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010)) that is "rarely invoked successfully" (*see MHS Capital LLC v. Goggin*, 2018 WL 2149718, at *11 (Del. Ch. May 10, 2018)).  It provides "a way to deal with unanticipated developments or to fill gaps in [a] contract's provisions[,]" (*see Overdrive*, *Inc. v. Baker & Taylor, Inc.*, 2011 WL 2448209, at *8 (Del. Ch. June 17, 2011)), but only where it is clear that the parties would have agreed to the obligation had they considered the issue.  *See Fitzgerald v. Cantor*, 1998 WL 842316, at *1-2 (Del. Ch. Nov. 10, 1998).  In addition, the implied covenant cannot be used where the contract already speaks to the obligation at issue.  *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 539 (Del. 2011).  Although (as discussed above) Plaintiff failed to identify any provisions of the DSU Student Handbook that were breached, her implied covenant claim is based on the same factual allegations underlying her breach of contract claim.  *Compare* Compl. ¶ 102 (DSU breached the Student Handbook by "[a]llowing Coach Thornton to retaliate against [her];" "[a]llowing Coach Thornton to create a hostile educational environment;" "[e]xpelling Plaintiff from the women's golf team;" and "artificially lowering Plaintiff's grades"), *with* Compl. ¶¶ 106-07 ("DSU...harassed and retaliated against [Plaintiff];" and "DSU's agent falsely concocted reasons for Plaintiff to both be eliminated from DSU's golf team and also constructively discharged as a student").  Because

Plaintiff claims there is a contract that speaks to the same conduct alleged to violate the implied covenant, her claim must be dismissed. *See Cent. Mortg. Co.*, 27 A.3d at 539 ("implied covenant of good faith and fair dealing [can be maintained] only if the factual allegations underlying the implied covenant claim differ from those underlying an accompanying breach of contract claim").

## V.   PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS.

Plaintiff's promissory estoppel claim must be dismissed for the same reason her breach of contract claim fails—she did not specifically identify any promise DSU failed to honor.   To recover on a claim for promissory estoppel, a plaintiff must show **by clear and convincing evidence**:   (a) a promise was made; (b) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (c) the promisee reasonably relied on the promise and took action to his detriment; and (d) such promise is binding because injustice can be avoided only by enforcement of the promise.  *See Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000).   "An essential element of promissory estoppel is that the promisor's representation...be reasonably definite and certain so that the intention of the parties can be ascertained." *State v. Simpson*, 1990 Del. Ch. LEXIS 149, at \*6 (Del. Ch. Sep. 24, 1990); *Continental Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1233 (Del. Ch. 2000) (holding that "the promise, in [a promissory estoppel] case, must be definite and certain").  Plaintiff's promissory estoppel claim is precluded because the only "promise" Plaintiff alleged (assuming it was made) is insufficiently definite and certain to support her claim.   Specifically, Plaintiff claims DSU promised "if [Plaintiff] fulfilled her obligations as a student athlete that she would keep her scholarship and have the opportunity to earn further scholarships."  *See* Compl. ¶ 110.  Plaintiff, however, failed to allege:  when the purported "promise" was made; where or how the alleged

17

promise was made; when, how, or by whom the promise would be carried out; or any other critical specifics.  *See James Cable, LLC v. Millennium Digital Media Sys., L.L.C.*, 2009 WL 1638634, at *5 (Del. Ch. June 11, 2009) (dismissing promissory estoppel claim because allegation that buyer and buyer's parent company said "that [buyer's parent] would ensure [buyer's] financial capability for the transaction and would provide funding to complete it" did not "amount to a real promise" because it did "not allege when the promise was made, to whom it was made, or any other specifics.").

Further, Plaintiff has not plausibly alleged DSU failed to honor its purported "promise." DSU's performance obligations under the "promise" alleged by Plaintiff were only triggered if Plaintiff "fulfilled her obligations as a ***student*** athlete."  *See* Compl. ¶ 110 (emphasis added). While Plaintiff's allegations are (tellingly) too vague and conclusory to determine the exact contours of her "obligations," achieving passing grades is certainly an obligation imposed on any student athlete hoping to retain an athletic scholarship.  Indeed, Plaintiff could not even continue ***playing*** Division I golf at DSU unless she maintained at least the minimum GPA required for graduation (*i.e.*, a 2.0 GPA) and completed the requisite number of credits towards her degree. *See* GRADUATION REQUIREMENTS; STAYING ON TRACK; DEGREE PROGRESS.  Plaintiff's own allegations confirm she failed to meet such obligations. *See* Compl. ¶¶ 61-62 ("Plaintiff received a "F" from Dr. Kong...Plaintiff's grade left her one credit short of keeping her scholarship"). Because Plaintiff has not adequately alleged a promise by DSU (or breach thereof) sufficient to state a claim for promissory estoppel, her claim must be dismissed.

## VI.   PLAINTIFF'S ASSAULT CLAIM FAILS.

Plaintiff's assault claim against Dr. Kong should be dismissed because Plaintiff's allegations establish there was no physical contact between Plaintiff and Dr. Kong and Plaintiff was not intentionally placed in apprehension of bodily harm.  Under Delaware law, a defendant

is liable for assault if:  (1) he or she acts intending to cause a harmful or offensive contact with the person of the other...or an imminent apprehension of such a contact; and (b) plaintiff is thereby put in such imminent apprehension.  *See Tilghman v. Delaware State Univ.*, 2012 WL 3860825, at *5 (Del. Super. Ct. Aug. 15, 2012); *see also Folks v. Allen*, 2019 WL 211957, at *1 (Del. Com. Pl. Jan. 10, 2019) (explaining an assault plaintiff "must prove by preponderance of the evidence that the opposing party intentionally caused the [plaintiff] to be in fear of an immediate harmful or offensive contact.") (citations omitted).

Plaintiff, merely reciting the elements required to state a cause of action for assault, claims Dr. Kong "intentionally, and without Plaintiff's consent, caused Plaintiff to be in fear of an immediate harmful or offensive contact."  *See* Compl. ¶¶ 69-77.  But Plaintiff's own allegations suggest—at most—Dr. Kong intended to speak with Plaintiff.  *See id.*  Plaintiff has not plead any facts showing Dr. Kong ***intended*** to "cause a harmful or offensive contact with her."  *See Tilghman*, 2012 WL 3860825, at *5.  Indeed, Plaintiff did not allege:  Dr. Kong expressed an intent to harm her, made any sudden movements towards her, or was even in close enough physical proximity to possibly cause her harm.  *See Gerber v. Veltri*, 203 F. Supp. 3d 846, 854 (N.D. Ohio 2016), *aff'd*, 702 F. App'x 423 (6th Cir. 2017) (plaintiff's assault claim fails because defendant "took no 'definitive act' from which this Court could infer he intended [plaintiff] to apprehend a harmful or offensive contact...He made no sudden movement toward [plaintiff].  He did not bring his free right hand toward [plaintiff]; in fact, he gestured away, toward the faculty lounge. He did not say anything to [plaintiff] suggesting he intended to physically harm [plaintiff].").  Further, other than her conclusory recital of the elements of an assault cause of action, Plaintiff has not alleged she was ***actually afraid*** Dr. Kong would harm her.  *See generally* Compl.  Accordingly, Plaintiff's assault claim should be dismissed.

19

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that their Motion to Dismiss be granted and Plaintiff's Complaint be dismissed with prejudice.


**SAUL EWING ARNSTEIN & LEHR LLP**

*/s/   James D. Taylor, Jr.*
James D. Taylor, Jr. (#4009)
Jessica M. Jones (#6246)
1201 N. Market Street, Suite 2300
Wilmington, Delaware 19899
Telephone: (302) 421-6800

*Counsel for Defendants*

Dated:  July 2, 2021