**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ALLISON AMBROSE | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  21-416 |
| | : | |
| DELAWARE STATE UNIVERSITY, *et* | : | |
| *al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                      **August 12, 2021**

A woman accepted a partial scholarship to attend Delaware State University and play on its women's golf team. She attended a movie party held by upperclassmen early in her freshman year where her freshman teammate drank too much and needed help getting home before getting sick. The woman called her mom asking for advice on how to help her sick teammate. Her mom called the golf team coach about the party. The woman now claims the golf team coach discriminated and retaliated against her for telling her mom "everything" about the party and he, along with other university officials, caused her to obtain lower grades in a computer science class and later forced her to leave the university. She does not plead this alleged conduct is caused by her gender. But she pleads her golf coach immediately began treating her much worse than others on the women's golf team, and the faculty athletic representative and one of her professors compounded the harm by retaliating against the protected speech of complaining about the golf coach's treatment of her. She does not plead discrimination based on gender but may proceed against three officials for retaliating against her for complaining. The University officials do not meet their burden of showing qualified immunity. She also barely pleads a claim for promissory estoppel against the University based on an alleged promised scholarship for all her university years and for assault against the university professor. She does not plead a claim

for discrimination based on her gender, claims against persons who did not actively retaliate against her, for breach of contract, or under an implied covenant of good faith and fair dealing. We dismiss those insufficiently plead claims without prejudice.

## I.   Alleged facts

Allison Ambrose accepted a partial scholarship to attend Delaware State University and compete on the women's golf team.[1] Scott Thornton coached the golf team.[2] Coach Thornton included the opportunity for Ms. Ambrose to receive further scholarships as he saw fit.[3] Upperclassmen on the team served alcohol to Ms. Ambrose's freshman teammate at a movie party early in Ms. Ambrose's freshman year.[4] Ms. Ambrose's roommate became sick after drinking too much.[5] Ms. Ambrose called her mom and told her about the party.[6] Ms. Ambrose's mother reported the incident to Coach Thornton.[7]

Coach Thornton asked Ms. Ambrose why she told her mother "everything" about the party.[8] Coach Thornton then began mistreating Ms. Ambrose to force her off the team because Ms. Ambrose told her mother about the party.[9] Coach Thornton did not give Ms. Ambrose the correct sized uniform; he negatively commented about Ms. Ambrose to her teammates; he required her to run errands for him, and required she drive her teammates to and from practice.[10] Coach Thornton threatened to pull back Ms. Ambrose's scholarship if she did not perform these tasks.[11]

Ms. Ambrose complained about Coach Thornton's retaliatory conduct to Faculty Athletic Representative Dr. Charlie Wilson.[12] Dr. Wilson told Coach Thornton and Interim Athletic Director Mary Hill about the complaint.[13] Director Hill did not otherwise respond to Ms. Ambrose's complaint.[14] Dr. Wilson did not stop Coach Thornton from making Ms. Ambrose perform menial tasks, encouraged Coach Thornton to strip Ms. Ambrose of her scholarship, and

failed to investigate or remedy her complaints.[15] After learning of Ms. Ambrose's report, Coach Thornton confronted Ms. Ambrose, suspended her for two games of her five-game season, and tampered with her golf ball to increase her stroke count during a golf tournament.[16]

### Ms. Ambrose enrolls in Dr. Kong's class.

Ms. Ambrose enrolled in two classes taught by Dr. Kam Kong.[17] She worked with Dr. Kong on an internship earlier in her education.[18] Ms. Ambrose took one of these two courses twice. The first time she took the class, Dr. Kong gave Ms. Ambrose a "D."[19] She characterized the grade as "unfair and undeserved" because of her unfamiliarity with the subject matter.[20] The second time Ms. Ambrose took the class, Dr. Kong allegedly treated her unfairly.[21]

Dr. Kong allegedly refused to call on her and gave her male classmate preferential treatment.  Dr. Kong also described her work as "not acceptable" when she had identical answers as a male classmate, to whom Dr. Kong gave "A" grades. When Ms. Ambrose hired a tutor and her work began to improve, Dr. Kong told her he believed her tutor did her work for her and he refused to grade the work.[22]

Ms. Ambrose "discovered . . . Dr. Kong had been meeting and conspiring with Coach Thornton . . . in an effort to get her off the golf team."[23] Dr. Kong gave Ms. Ambrose an "F" leaving Ms. Ambrose one credit short of keeping her golf scholarship.[24] Ms. Ambrose scheduled a meeting with Department Chairman Dr. Rasamny to complain about her grades and about Dr. Kong's contact with Coach Thornton.[25] Dr. Kong admitted he had spoken to Coach Thornton about Ms. Ambrose's grades and her position on the golf team.[26] Dr. Rasamny acknowledged Dr. Kong violated protocol by discussing with her grades with Coach Thornton without Ms. Ambrose's knowledge.[27] Dr. Rasamny told Ms. Ambrose she should raise the issue with the academic advisors if she wanted to pursue the matter after their meeting.[28]

3

Ms. Ambrose complained to her academic advisor Dr. Wilson.[29] Dr. Kong found out about her complaint.[30] Dr. Kong then repeatedly tried to contact Ms. Ambrose.[31] He called her several times in one day.[32] He stood outside one of her classes to wait for her when she did not answer.[33] Another student distracted Dr. Kong to allow Ms. Ambrose to sneak past him.[34] Dr. Kong then chased Ms. Ambrose down the hall, down the stairs, and to her car.[35]

Ms. Ambrose complained of Dr. Kong's conduct to the University Police and the University Provost Tony Allen.[36] Provost Allen's assistant "witnessed [Ms. Ambrose] in tears," at some point.[37] Provost Allen encouraged Ms. Ambrose not to withdraw from the school.[38] The University Police also did not address Ms. Ambrose's complaint against Dr. Kong.[39]

Ms. Ambrose later learned Dr. Kong taught two additional classes required for Ms. Ambrose to complete her major.[40] Dr. Wilson insisted Ms. Ambrose continue taking classes with Dr. Kong to complete her major.[41] Ms. Ambrose decided to leave the University rather than continue studying under Dr. Kong.[42] Athletic Director D. Scott Gines offered to assist Ms. Ambrose in transferring to another university.[43]

Ms. Ambrose then sued the University, Provost Tony Allen, Dr. Kong, Dr. Rasamny, Director Hill, Dr. Wilson, Coach Thornton, and Athletic Director Gines alleging various forms of mistreatment.[44] She sues the University for Title IX retaliation, breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.[45] She sues Provost Tony Allen, Dr. Kong, Department Chairman Dr. Rasamny, Interim Athletic Director Hill, Dr. Wilson, Coach Thornton, and Athletic Director Gines (collectively, the "University Officials") for retaliation under the First Amendment of the United States Constitution.  She also sues Dr. Kong for assault.[46]

4

## II.    Analysis

The University and the University Officials move to dismiss arguing Ms. Ambrose fails to plead her claims.[47] The University Officials further argue they are entitled to qualified immunity on Ms. Ambrose's First Amendment retaliation claim.[48] We grant in part and deny in part the University and its Officials' motion to dismiss. We dismiss Ms. Ambrose's Title IX retaliation claim against the University. We dismiss the First Amendment retaliation claims against Provost Allen, Dr. Rasamny, and Director Gines, but we allow Ms. Ambrose to proceed on her First Amendment claims against Dr. Kong, Coach Thornton, and Dr. Wilson.

We further dismiss Ms. Ambrose's breach of contract and violation of implied covenant of good faith and fair dealing claims against the University. We allow her promissory estoppel claim against the University and her assault claim against Dr. Kong to proceed at this early stage.

### A.    Ms. Ambrose fails to state a Title IX retaliation claim.

The University moves to dismiss Ms. Ambrose's Title IX retaliation claim arguing Ms. Ambrose pleads neither a protected activity nor an adverse action.[49] The University argues Ms. Ambrose fails to plead a protected activity because she does not plead she complained of sex discrimination.[50] The University also argues Ms. Ambrose fails to plead an adverse action because the two "adverse actions" she identifies – failing to address her complaints and "constructively expelling" her – are not actionable under Title IX as a matter of law.[51] We agree Ms. Ambrose fails to plead an activity protected by Title IX, and we dismiss her Title IX claim without prejudice and without addressing whether she suffered an "adverse action" under Title IX.

Congress prohibits recipients of federal education funding from subjecting a person to discrimination on the basis of sex.[52] The Supreme Court interprets Title IX as prohibiting

5

recipients of federal education funding from retaliating against a person who engages in activity protected by Title IX.[53] To state a Title IX claim, Ms. Ambrose must plead facts sufficient to plausibly show the University "retaliated against [her] because [she] complained of sex discrimination."[54] Ms. Ambrose must plead: (1) she "engaged in activity protected by Title IX"; (2) she "suffered an adverse action"; and (3) a causal connection existed between the two.[55] Complaints of sexual discrimination qualify as protected activities.[56] The message "must at a minimum convey the speaker's express or implicit protest of discriminatory practices [violating] the federal anti-discrimination statutes."[57] "A general complaint of unfair treatment is insufficient to establish protected activity."[58] Adverse action must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."[59] "To establish the requisite casual connection, [Ms. Ambrose] must [plead] facts to demonstrate either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'"[60]

Ms. Ambrose fails to state a claim under Title IX because she fails to allege she engaged in a "protected activity" under Title IX. Ms. Ambrose accuses the University of violating Title IX by not "act[ing] on [her] complaints of a hostile education environment based on gender either regarding Coach Thornton or Dr. Kong."[61] But her conclusory allegation finds no support in her pleaded facts. While Ms. Ambrose alleges she complained of Coach Thornton's various forms of mistreatment, she does not allege Coach Thornton mistreated her because of her gender. She instead attributes this mistreatment to Coach Thornton's anger at Ms. Ambrose for reporting her teammates' alcohol use to her mother. The facts she alleges describing her complaints about Coach Thornton to the University's faculty do not show she accused him of gender discrimination. The same is true for Dr. Kong. While Ms. Ambrose alleges Dr. Kong gave her

lower grades than a male classmate, she attributes Dr. Kong's mistreatment to an alleged conspiracy between Dr. Kong and Coach Thornton to fail Ms. Ambrose and prevent her from participating on the golf team. She does not attribute his mistreatment to gender discrimination. Ms. Ambrose's complaints about Dr. Kong's conduct involved his improper communication with her coach and his behavior following her report to Dr. Rasamny. She alleges no facts suggesting she complained of gender discrimination.

Ms. Ambrose fails to allege she engaged in the requisite "protected activity" necessary for a Title IX retaliation claim. We dismiss her Title IX claim without prejudice.

**B.     Ms. Ambrose states a First Amendment retaliation claim against Dr. Kong, Coach Thornton, and Dr. Wilson, but not against the remaining University Officials.**

The University Officials move to dismiss Ms. Ambrose's First Amendment retaliation claim, arguing Ms. Ambrose did not engage in protected speech or suffer an adverse action.[62] They argue Ms. Ambrose's various complaints to different members of the faculty about Dr. Kong and Coach Thornton do not involve matters of public concern and are not entitled to First Amendment protection.[63] The University Officials also argue Ms. Ambrose does "not allege any affirmative actions" by the University Officials.[64] The University Officials do not dispute a causal link between the alleged constitutionally protected conduct and the retaliatory action. The University Officials then contend they are entitled to qualified immunity if Ms. Ambrose states a claim for First Amendment retaliation.[65] We find Ms. Ambrose pleads plausible First Amendment retaliation claims against Dr. Kong, Coach Thornton, and Dr. Wilson, but she fails to state retaliation claims against Tony Allen, Marwan Rasamny, Scott Gines, and Mary Hill.

To state a claim for First Amendment retaliation, Ms. Ambrose must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of

ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."[66]

We first assess whether Ms. Ambrose pleads her constitutionally protected activity. Finding Ms. Ambrose pleads a constitutionally protected activity, we then assess whether the University Officials took retaliatory actions against her. Ms. Ambrose fails to plead Provost Allen, Dr. Rasamny, Director Gines, and Director Hill retaliated against her, but she pleads Coach Thornton, Dr. Kong, and Dr. Wilson retaliated. We then assess whether Coach Thornton, Dr. Kong, and Dr. Wilson are entitled to qualified immunity. We find Coach Thornton, Dr. Kong, and Dr. Wilson have not met their burden to date to establish qualified immunity, and we allow Ms. Ambrose to proceed on her First Amendment retaliation claim against Coach Thornton, Dr. Kong, and Dr. Wilson.

> **1.      Ms. Ambrose pleads she engaged in constitutionally protected activity.**

The University Officials argue Ms. Ambrose fails to plead she engaged in a constitutionally protected activity because "speech must transcend personal interest and 'involve matters of public concern' that touch on broad social policy.'"[67] The University Officials misstate the present status of the law.[68]

Our Court of Appeals instructs, in no uncertain terms, "students' free speech rights are not limited to matters of public concern."[69] "Students do not 'shed their constitutional rights to freedom of speech or expression,' even 'at the school house gate.'"[70] The Supreme Court recognizes specific categories of student speech that schools may regulate in certain circumstances: (1) indecent, lewd, or vulgar speech uttered during a school assembly or on school grounds; (2) speech, on a school trip, promoting illegal drug use; (3) speech "others may

reasonably perceive as bearing on the imprimatur of the school"; and (4) speech materially disruptive to classwork or involving substantial disorder or the invasion of the rights of others.[71]

Ms. Ambrose alleges she complained to various University Officials about the mistreatment she received from Dr. Kong and Coach Thornton. We have no basis to infer her complaints fell into any of the four categories of unprotected student speech identified by the Supreme Court. We find her speech protected under the First Amendment, and we find she pleads the first element of retaliation.

> **2.   Ms. Ambrose pleads Coach Thornton, Dr. Kong, and Dr. Wilson retaliated for her protected speech but she fails to plead the other University Officials retaliated.**

The University Officials argue Ms. Ambrose fails to plead a retaliatory action because she pleads only inaction, which is insufficient to state a claim for First Amendment retaliation. Ms. Ambrose argues she adequately pleads several retaliatory actions, including: "failing to remedy Coach Thornton's hostile education environment"; "allowing Coach Thornton to have [her] do menial tasks"; "Coach Thornton retaliating against Plaintiff for complaining about him forcing her to engage in menial tasks and works"; "allowing Coach Thornton and Dr. Kong to collude for Plaintiff to be kicked off the golf team and then constructively expelled from [Delaware State University]"; and "allowing Dr. Kong to retaliate against Plaintiff by not grading her work in a fair and objective manner."[72] Ms. Ambrose fails to plead Provost Allen, Dr. Rasamny, Director Gines, and Director Hill took retaliatory actions against her, but she pleads Coach Thornton, Dr. Kong and Dr. Wilson retaliated against her.

a.   **Ms. Ambrose fails to plead Provost Allen, Dr. Rasamny, Director Gines, and Director Hill retaliated against her.**

A retaliatory action must be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights."[73] "Allegations of inaction are insufficient to maintain a claim for retaliation" under the First Amendment.[74]

Ms. Ambrose fails to plead Provost Allen, Dr. Rasamny, Director Gines, and Director Hill retaliated against her for protected speech. She alleges only inaction or actions insufficient to deter a person of ordinary firmness from exercising her constitutional rights. We address each official's liability in turn, and we dismiss the First Amendment retaliation claims against them without prejudice.

### *Provost Allen did not take a retaliatory action.*

Provost Allen's only alleged action consisted of advising Ms. Ambrose not to withdraw from the University.[75] We do not find this advice sufficient to deter a person of ordinary firmness from exercising their constitutional rights.

### *Dr. Rasamny did not take a retaliatory action.*

Dr. Rasamny hosted various meetings between Ms. Ambrose and Dr. Kong but failed to report her complaints to a higher level of command. We must dismiss the retaliation claim against Dr. Rasamny because inaction cannot be retaliatory conduct.

### *Director Gines did not take a retaliatory action.*

Ms. Ambrose mentions Director Gines once in her complaint.[76] She alleges Director Gines "said he would assist [her] in transferring to another institution" but failed to "act or remedy" her complaints against Coach Thornton or Dr. Kong. This claim must fail because "allegations of inaction are insufficient to state a claim for retaliation," and we do not see how offering Ms. Ambrose assistance in her transfer application after she informed Director Gines

she planned to transfer would deter a person of ordinary firmness from exercising her First Amendment rights.[77]

### Director Hill did not take retaliatory action.

Ms. Ambrose alleges Director Hill did not take action to correct "Coach Thornton's illegal conduct" after she learned of Ms. Ambrose's complaints.[78] Like the claim against Director Gines and Dr. Rasamny, this claim must fail because "allegations of inaction are insufficient to state a claim for retaliation."[79]

      **b.    Ms. Ambrose pleads Coach Thornton, Dr. Kong, and Director Wilson took retaliatory action against her.**

Taking the allegations as true as we must at this stage in the litigation, we find Ms. Ambrose pleads Coach Thornton, Dr. Kong, and Director Wilson retaliated against her.

### Ms. Ambrose pleads Coach Thornton retaliated against her.

Ms. Ambrose alleges Coach Thornton took several actions against her in retaliation for reporting her teammates' drinking to her mother and complaining about him to other faculty members, including: (1) tampering with her ball at a golf tournament; (2) suspending her from games; and (3) conspiring with Dr. Kong to fail her and provide an excuse for expelling her from the golf team.

The Court of Appeals for the Ninth Circuit's decision in *Pinard v. Clatskanie School District* guides us.[80] In *Pinard*, a public school suspended high school basketball players from the team after they wrote and signed a petition asking for their coach's resignation, complained to school district officials about the coach's conduct, and refused to board the bus to a game.[81] The players sued their school district and various school district officials for First Amendment retaliation, alleging their suspension from the school basketball team resulted from their criticisms of the team's coach.[82] The court of appeals held the Constitution protected the petition

and complaints "and the defendants' suspension of the plaintiffs [from the team] would lead ordinary student athletes in the plaintiffs' position to refrain from complaining about an abusive coach in order to remain on the team."[83]

Like in *Pinard*, where school officials suspended high school basketball players from the team after they complained of their coach's misconduct, Ms. Ambrose alleges she complained about her coach's mistreatment and, as a result, Coach Thornton interfered with her ability to compete on the golf team by tampering with her ball, suspending her from matches, and ultimately kicking her off the team. We find, as the Court of Appeals for the Ninth Circuit did, these actions would deter a person of ordinary firmness from complaining about her coach.

### Ms. Ambrose pleads Dr. Kong retaliated against her.

Ms. Ambrose alleges Dr. Kong failed her in his class after she complained to him about mistreating her, which caused her to lose her promised athletic scholarship. After she reported his treatment to Dr. Rasamny, Dr. Kong called her multiple times, waited for her outside her classroom, and chased her to her car. Ms. Ambrose alleges these events caused her to fear for her safety and led her to file a police report. Receiving a failing grade resulting in a loss of an athletic scholarship and being chased to her car would deter student of ordinary firmness from speaking out about alleged professor misconduct.

### Ms. Ambrose pleads Dr. Wilson retaliated against her.

Ms. Ambrose alleges after she complained to Dr. Wilson about Coach Thornton and Dr. Wilson "retaliated against [her] by conspiring to constructively discharge [her] from the golf team."[84] He also encouraged "Coach Thornton to strip [her] of her scholarship one credit short despite NCAA rules allowing a continuing of her scholarship."[85]

Taking these allegations as true as we must today, Ms. Ambrose narrowly pleads Dr. Wilson took an adverse action against her. Knowing the Faculty Athletic Representative would conspire for a student athlete's removal from their college sports team for complaining about the coach, like in *Pinard*, would deter a person of ordinary firmness from exercising their constitutional right to report experiencing mistreatment.

### 3. Coach Thornton, Dr. Kong, and Dr. Wilson have not established qualified immunity.

The University Officials argue we should dismiss Ms. Ambrose's First Amendment retaliation claim because they are entitled to qualified immunity. Relying solely on the flawed premise Ms. Ambrose cannot invoke First Amendment protection for speech unrelated to matters of public concern, the University Officials argue they did not violate any "clearly established" constitutionally protected right.[86] We disagree based on this reason and find Coach Thornton, Dr. Kong, and Dr. Wilson have not established their right to qualified immunity subject to discovery.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing:" (1) "the official violated a statutory or constitutional right," and (2) "the right was 'clearly established' at the time of the challenged conduct."[87] "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[88] "A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] . . . what he is doing violates that right.'"[89] "In other words, 'the application of the right at hand must be 'beyond debate.'"[90] "If a government official . . . reasonably thinks her conduct complies with the law, she is shielded from liability."[91] "Even if there is no precedent directly on point, however, an action may still violate a clearly established right where a general constitutional rule already identified in the decisional law applies with

'obvious clarity' to the specific conduct in question."[92] In other words "clearly established" "means . . . in light of preexisting law, the unlawfulness of the official's conduct was reasonably and objectively apparent."[93] The Supreme Court instructs government officials can still be on notice their conduct violates established law "even in novel factual circumstances."[94] The "burden is on the [the University Officials] to establish an entitlement to qualified immunity."[95]

Dr. Wilson, Dr. Kong, and Coach Thornton base their qualified immunity argument entirely on the erroneous argument Ms. Ambrose's speech did not relate to matters of public concern and did not warrant First Amendment protection and thus she has not rights whatsoever, let alone "clearly established" rights. As discussed, student speech need not relate to matters of public concern to receive First Amendment protection. Dr. Wilson, Dr. Kong, and Coach Thornton fail to meet the burden to show entitlement to qualified immunity, subject to discovery.

**C.   Ms. Ambrose fails to state a breach of contract claim.**

Ms. Ambrose asserts a breach of contract claim against the University, arguing the University breached the Delaware State University Student Handbook by: allowing Coach Thornton to retaliate against her for complaining about him; allowing Coach Thornton to create a hostile educational environment; expelling her from the women's golf team; failing to investigate her complaint against Coach Thornton; failing to investigate her complaints against Dr. Kong; and artificially lowering her grades.[96] The University moves to dismiss arguing Ms. Ambrose fails to identify which provisions of the Student Handbook the University violated.[97] We agree with the University and dismiss Ms. Ambrose's claim.

"To plead a breach of contract claim, [Ms. Ambrose] must allege (1) the existence of a contract; (2) the breach of an obligation imposed by that contract; and (3) resulting damage to [Ms. Ambrose]."[98]

Ms. Ambrose fails to plead the second element – the breach of an obligation imposed by a contract – because she does not plead the Student Handbook's obligations. Without identifying the contract language prohibiting the University's alleged actions, she fails to plead facts providing the University with notice of the breach of contract claims against it. We dismiss this claim without prejudice.

### D. Ms. Ambrose fails to state a breach of the implied covenant of good faith and fair dealing claim.

Ms. Ambrose pleads the University breached the implied covenant of good faith and fair dealing because "[u]nder Delaware law, [Ms. Ambrose's] student relationship with Delaware State University included an implied covenant of good faith and fair dealing."[99] Ms. Ambrose pleads the University retaliated against her and "falsely concocted reasons for [her] to both be eliminated from [University's] golf team and also constructively discharged as a student."[100] The University moves to dismiss arguing Ms. Ambrose failed to identify the obligation the University breached.[101] We agree with the University.

Ms. Ambrose "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[102] Ms. Ambrose fails to plead the first element for breach of the implied covenant of good faith and fair dealing – a specific implied contractual obligation – because she does not allege a "specific implied contractual obligation" arising from a contract between her and the University. She only pleads Ms. Ambrose's student relationship with the University "included an implied covenant of good faith and fair dealing."[103]

Ms. Ambrose must plead the specific obligation, not generalizations. We dismiss this breach of implied covenant claim against the University without prejudice.

15

### E.      Ms. Ambrose pleads a promissory estoppel claim.

Ms. Ambrose alleges the University promised "if she fulfilled her obligations as a student athlete . . . she would keep her scholarship and have the opportunity to earn further scholarships.[104] She alleges she relied on this promise before committing to the University and withdrew from seeking other opportunities to her detriment.[105] The University moves to dismiss arguing Ms. Ambrose "did not specifically identify any promise [the University failed to honor].[106]  The University also argues Ms. Ambrose does not plead the University failed to honor its promise because they had to perform only if Ms. Ambrose fulfilled her obligations as a student athlete, meaning complying with the grade requirement, and she failed to do so.[107] In light of Ms. Ambrose's allegations University Officials interfered with her ability to maintain her grade point average, we find Ms. Ambrose states a claim for promissory estoppel at this stage.

To state a claim for promissory estoppel Ms. Ambrose must plead: (1) the University made a promise; (2) the University reasonably expected to induce action or forbearance on the part of the promise; (3) Ms. Ambrose reasonably relied on the promise and took action to his detriment; and (4) "such promise is binding because injustice can be avoided only be enforcement of the promise."[108] "The promise must also be reasonably definite and certain."[109]

Ms. Ambrose alleges "[i]n 2016, Coach Thornton offered [Ms. Ambrose] a $2,000.00 athletic scholarship with an opportunity to receive further scholarships after he saw her improve under his supervision."[110] She alleges she relied to her detriment on this promise by not pursuing other opportunities and accepting the scholarship offer. While Ms. Ambrose did not maintain her grade point average, she alleges University Officials conspired against her to prevent her from doing so.

Her allegations barely, but sufficiently, state a claim for promissory estoppel at this early stage. We allow Ms. Ambrose to seek discovery into her promissory estoppel claim.

### F.    Ms. Ambrose pleads an assault claim.

Ms. Ambrose sues Dr. Kong for assault, alleging he "intentionally, and without [Ms. Ambrose's] consent, caused [Ms. Ambrose] to be in fear of an immediate harmful or offensive contact," and Ms. Ambrose suffered damages.[111] Dr. Kong moves to dismiss, arguing Ms. Ambrose fails to plead facts showing he acted with intent to harm or cause offensive contact with Ms. Ambrose, and she fails to plead facts Dr. Kong put her in imminent apprehension of such contact.[112] At this early stage of litigation, we find it premature to dismiss Ms. Ambrose's assault claim.

To state an assault claim under Delaware law, Ms. Ambrose must plead Dr. Kong "acted with the intent to cause imminent apprehension of harmful or offensive contact," and put her in such imminent apprehension.[113] Evaluating the merits of Ms. Ambrose's claim involves an assessment of both Dr. Kong's and Ms. Ambrose's state of mind. These are fact questions requiring discovery. Ms. Ambrose alleges she felt fearful enough to file a police report with the University Police, allowing us to plausibly infer she felt "imminent apprehension of offensive contact." We deny Dr. Kong's motion to dismiss Ms. Ambrose's assault claim.

## III.    Conclusion

Delaware State University's women's golf team coach allegedly offered Allison Ambrose a partial scholarship to attend the University and play on its women's golf team. Upperclassmen on the golf team invited freshman Ms. Ambrose and her freshman teammate to a movie watching party where the teammate become intoxicated. Ms. Ambrose called her mom to ask how to help her sick teammate. Her mom then called the University's women's golf team's coach. The golf

team's coach allegedly retaliated along with a computer science professor and another University official over several months by impairing Ms. Ambrose's ability to be on the golf team and affecting her grade point average in the computer science professor's class resulting in the inability to play on the golf team.

We grant in part and deny in part the University, Tony Allen, Kam Kong, Marwan Rasamny, Mary Hill, Charlie Wilson, Scott Thornton, and Scott Gines's Motion to dismiss Ms. Ambrose's claims. We dismiss Ms. Ambrose's Title IX Retaliation claim against the University without prejudice. We dismiss the First Amendment retaliation claims against Tony Allen, Marwan Rasamny, Mary Hill, and Scott Gines without prejudice, but allow her retaliation claim against Coach Thornton, Dr. Kong, and Dr. Wilson to proceed into discovery. We dismiss Ms. Ambrose's breach of contract and violation of implied covenant of good faith and fair dealing claims against the University without prejudice. Ms. Ambrose may also proceed on her promissory estoppel claim against the University and her assault claim against Dr. Kong.

---

[1] ECF Doc. No. 1 ¶¶ 5-6, 14.

[2] *Id.* ¶ 13.

[3] *Id.* ¶ 14.

[4] *Id.* ¶ 15.

[5] *Id.* ¶¶ 15-17.

[6] *Id.* ¶ 18.

[7] *Id.* ¶ 19.

[8] *Id.* ¶ 20.

[9] *Id.* ¶¶ 19-26.

[10] *Id.* ¶¶ 23-24.

[11] *Id.* ¶ 23.

[12] *Id.* ¶ 25.

[13] *Id.* ¶¶ 26-27.

[14] *Id.* ¶ 26.

[15] *Id.* ¶ 29.

[16] *Id.* ¶¶ 31, 34.

[17] *Id.* ¶ 37.

[18] *Id.* ¶ 38.

[19] *Id.* at ¶ 44.

[20] *Id.*

[21] *Id.* at ¶¶ 45-61.

[22] *Id.* ¶¶ 42, 51, 54.

[23] *Id.* ¶ 59.

[24] *Id.* ¶¶ 61-62.

[25] *Id.* ¶ 63.

[26] *Id.* ¶ 64.

[27] *Id.* ¶ 65.

[28] *Id.* ¶ 66.

[29] *Id.* ¶ 67.

[30] *Id.* ¶ 68.

[31] *Id.* ¶ 69.

[32] *Id.*

[33] *Id.* ¶ 70.

---

[34] *Id.* ¶ 75.

[35] *Id.* ¶¶ 76-77.

[36] *Id.* ¶¶ 78, 85.

[37] *Id.* ¶ 86.

[38] *Id.* ¶¶ 87-88.

[39] *Id.* ¶¶ 78-79.

[40] *Id.* ¶ 80.

[41] *Id.* ¶ 88.

[42] *Id.* ¶ 80.

[43] *Id.* ¶ 84.

[44] ECF Doc. No. 1.

[45] *Id.* Ms. Ambrose does not specify the alleged liable party in the title of her Count V promissory estoppel claim, but the body of the count indicates she asserts this claim against the University as it is the only named party who could accept reduced tuition and possibly be relied upon subject to discovery and further amendment.

[46] *Id.*

[47] ECF Doc. No. 14. Federal Rule of Civil Procedure 12(b)(6) requires Ms. Ambrose to plead a claim upon which relief can be granted. Fed. R. Civ. P. (12)(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If Ms. Ambrose is unable to plead "enough facts to state a claim to relief that is plausible on its face," we should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104, n. 5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content … allow[ing] the court to draw the reasonable inference … the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

20

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe*, *M.D., P.C.,* 806 F. App'x at 152 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations, ..., and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'..., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[48] ECF Doc. No. 14 at 19-20.

[49] *Id.* at 11-15.

[50] *Id.* at 12.

[51] *Id.* at 13-14.

[52] 20 U.S.C. § 1681(a).

[53] *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005); *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979).

[54] *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005).

[55] *Doe v. Princeton Univ.*, 790 Fed. App'x 379, 384-85 (3d Cir. 2019).

[56] *Dawn v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 322, 374 (W.D. Pa. 2008) (citing *Burlington N. & Santa Re Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 180-81 (2005)).

[57] *Isler v. Keystone Sch. Dist.*, No. 07-1335, 2008 WL 3540603, at *10 (E.D. Pa. Aug. 12, 2008).

[58] *Curay-Cramer* v. *Ursuline Acad. of Wilmington, DE, Inc.*, 450 F.3d 130, 135 (3d. Cir. 2006).

[59] *Williams v. Pennridge Sch. Dist.*, 782 F. App'x 120,125 (3d Cir. 2019) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

[60] *Frazer v. Temple Univ.*, 25 F. Supp.3d 598, 615 (E.D. Pa. 2014) (citing *Cooper v. Menges*, 541 F. App'x 228, 232 (3d Cir. 2013)).

[61] ECF Doc. No. 1 ¶ 81.

[62] ECF Doc. No. 14 at 16.

[63] *Id.* at 18.

[64] *Id.* at 18-19.

[65] *Id.* at 19-20.

[66] *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2016) (citing *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)).

[67] ECF Doc. No. 14 at 10-11.

[68] *Id.* at 16-17. Defendants cite *Gorum v. Sessoms* and *Miller v. Clinton City*, two cases regarding public employee speech. Public employees are subject to a different standard than public school students.

[69] *B.L. v. Mahoney Area Sch. Dist.*, 964 F.3 170, 183 (3d Cir. 2020), *aff'd sub. nom. Mahoney Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038 (2021).

[70] *Mahoney*, 141 S. Ct. at 2044.

[71] *Id.*

[72] ECF Doc. No. 1 ¶ 98.

[73] *Thomas*, 463 F.3d at 296.

[74] *Monn v. Gettysburg Area Sch. Dist.*, 553 F. App'x 120, 121 (3d Cir. 2014) (citing *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 433 n. 11 (3d Cir. 2006)).

[75] ECF Doc. No. 1 ¶¶ 85, 87.

[76] *Id.* ¶ 84.

[77] *Id*; *Monn*, 553 F. App'x at 121 (citing *Kaucher*, 455 F.3d at 433, n. 11).

[78] ECF Doc. No. 1 ¶ 26.

[79] *Id*; *Monn*, 553 F. App'x at 121 (citing *Kaucher*, 455 F.3d at 433, n. 11.

[80]  467 F.3d 755 (9th Cir. 2006).

[81] *Id.* at 760-761.

[82] *Id.* at 759-760.

[83] *Id.* at 771.

[84] ECF Doc. No. 1 ¶ 28.

[85] *Id.* ¶ 29.

[86] ECF Doc. No. 14 at 20.

[87] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[88] *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 162 (3d Cir. 2017) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[89] *Ashcroft*, 563 U.S. at 741.

[90] *Borrell*, 870 F.3d at 162 (quoting *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016)).

[91] *Id.*

[92] *Grohs v. Yatauro*, 984 F. Supp.2d 273, 287 (D. N.J. 2013) (citing *Hope v. Pelzer*, 536 U.S. 730, 741, (2002); *Anderson v. Creighton*, 483 U.S. 653, 640 (1987)).

[93] *McGreevy v. Stroup*, 413 F.3d 359, 366 (3d Cir. 2005) (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

[94] *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

[95] *Peroza-Benitez v. Smith*, 995 F.3d 157, 165 (3d Cir. 2021).

[96] ECF Doc. No. 1 ¶¶ 100-103.

[97] ECF Doc. No. 14 at 21.

[98] *Edinburgh Holdings, Inc.*, *v. Educ. Affiliates, Inc.*, No. 2017-0500, 2018 WL 2727542, at *13 (Del. Ch. June 6, 2018).

[99] ECF Doc. No. 1 ¶ 105.

[100] *Id.* ¶ 107.

[101] ECF Doc. 14 at 22.

[102] *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. April 15, 2009) (citing *Fitzgerald v. Cantor*, No. 16297, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)).

[103] ECF Doc. No. 1 ¶ 105.

[104] *Id.* ¶ 110.

[105] *Id.* ¶ 112.

[106] ECF Doc. No. 14 at 24.

[107] *Id.* at 23-24.

[108] *Virgin Islands v. Goldman, Sachs & Co.*, 937 A.2d 760, 804 (Del. Ch. 2007) (quoting *Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003).

[109] *Id.*

[110] ECF Doc. No. 1 ¶ 14.

[111] ECF Doc. No. 1 ¶¶ 117-18.

[112] ECF Doc. No. 14 at 24-26.

[113] *M.W. v. Lynch*, No. 18-856, 2020 WL 6043891, at *7 (D. Del. Oct. 13, 2020).